UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

U.S. DISTRICT COURT - N.D. OF N.Y.
FILED
APR 10 2019
AT____ O'CLOCK
John M. Domurad, Clerk - Albany

UNITED STATES OF AMERICA and
STATE OF NEW YORK ex rel.
MAUREEN MOUNCE BRADLEY,

    Plaintiffs,

-against-

OSWEGO HOSPITAL,

    Defendant.

5:19 CV 431 (GTS/ATB)

Filed under seal pursuant to
31 U.S.C. § 3730(b)(2)

## COMPLAINT AND DEMAND FOR JURY TRIAL

1.  This is a civil action by relator Maureen Mounce Bradley ("Relator") on his own behalf and on behalf of the United States of America and the State of New York against defendant Oswego Hospital ("Defendant") under the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3729 *et seq.* ("FCA") and the New York State False Claims Act, N.Y. State Finance Law §§ 187 *et seq.* ("NYSFCA"), for treble damages, per claim/per false statement penalties, attorneys' fees and litigation expenses and other relief arising from Defendant's fraudulent billing practices against the Medicare program and the Medicaid program in New York.

## NATURE AND OVERVIEW OF THE ACTION

2.  As set forth more fully below in this complaint, Defendant violated the FCA and the NYSFCA by billing Medicare and Medicaid for healthcare services that were rendered by unsupervised licensed master social workers ("LMSW").

1

3. As a result of the above-described activities, the United States and the State of New York have suffered economic losses, the precise amount of which will be determined at trial.

## JURISDICTION

4. The Court has subject matter jurisdiction over the federal claims alleged in this complaint under 31 U.S.C. § 3732(a) (False Claims Act), 28 U.S.C. § 1331 (federal question), and § 1345 (United States as plaintiff). Jurisdiction over the state law claims arises under 31 U.S.C. § 3732(b) (jurisdiction over state claims arising from the same transaction or occurrence as an action under the federal FCA), and 28 U.S.C. § 1367(a) (supplemental jurisdiction).

5. The Court has personal jurisdiction over Defendant pursuant to 31 U.S.C. §3732(a) because Defendant can be found, resides, and transacts business in the Northern District of New York and because an act proscribed by 31 U.S.C. § 3729 occurred within this District. Section 3732(a) further provides for nationwide service of process.

## VENUE

6. Venue is proper in the Northern District of New York under 28 U.S.C. §§ 1391(b) and (c), and 31 U.S.C. § 3732(a) in that Defendant resides and transacts business, and a substantial part of the events or omissions giving rise to the violations of 31 U.S.C. § 3729 alleged in this complaint occurred, in this District.

## PARTIES, ENTITIES, AND INDIVIDUALS

7. The United States, through the United States Department of Health and Human Services ("HHS"), and the State of New York, through the New York State Department of Health ("NYSDOH"), are the real parties in interest in the *qui tam* claims in this action.

8. HHS is located at 200 Independence Avenue, SW, Washington, DC 20201. Within HHS, the Centers for Medicare and Medicaid Services ("CMS") administers and funds the Medicare program and co-funds the Medicaid program. CMS is located at 7500 Security Boulevard, Baltimore, Maryland, 21244-1850.

9. Upon information and belief, including based upon its website, at all relevant times, National Government Services, Inc., ("NGS") was a private Medicare administrative contractor ("MAC") that, on behalf of HHS and CMS, processed Medicare Part A and Part B claims submitted by healthcare providers in New York State, including Defendant. NGS is owned by WellPoint. NGS' corporate office is located at 8115 Knue Road, Bldg. 48, Indianapolis, IN 46250.

10. The State of New York co-funds the New York Medicaid program and is responsible for administering it.

11. Acting on behalf of the State of New York, NYSDOH administers the Medicaid program through its Office of Health Insurance Programs, which is located at Corning Tower, Empire State Plaza, Albany, NY 12237. New York Medicaid claims are processed through the New York State Medicaid Management Information System ("MMIS"), currently also referred to as "eMedNY."

12. Upon information and belief, including based upon its website, at all relevant times, Computer Sciences Corporation ("CSC") was a private internet technology contractor that, on behalf of NYSDOH, processed New York Medicaid claims submitted to MMIS/eMedNY by healthcare providers in New York State, including Defendants. CSC processes New York Medicaid claims at offices located at 327 Columbia Turnpike Rensselaer, New York 12144.

13. Relator resides in the County of Oswego, New York. At all times relevant to this action, Relator was employed by Defendant as a LMSW at Defendant's behavioral services clinic,

3

located at 74 Bunner Street, Oswego, NY 13126. Relator's national provider identifier ("NPI") is 1316357080 and her New York State LMSW license number is 90982.

14. Defendant is a 164-Bed community hospital providing acute, medical, emergency, surgical, maternity and behavioral services. Defendant is an affiliate of a healthcare system known as Oswego Health. Defendant's principal address is 110 West Sixth Street, Oswego, New York 13126. It is an active New York not-for-profit entity. Defendant's NPI is 1871678458 and its EIN is 15-0532220.

15. Oswego Health, Inc. ("Oswego Health") is the sole member and owner of Defendant. Oswego Health is an active New York not-for-profit holding corporation.

16. Oswego Behavioral Health Services ("Oswego Behavior Health") is an outpatient clinic providing mental healthcare services to patients of Defendant, including, patients who are Medicare and Medicaid beneficiaries. Oswego Behavior Health is a division of Defendant and Oswego Health and is located at 74 Bunner Street, Oswego, New York 13126. Its NPI is 1598135592. At any given time during the period relevant to this complaint, Oswego Behavioral Health employed approximately seven LMSWs, including, Relator, Rhonda O'Connor (NPI: 1902331341) and Melissa Ann Gallup (NPI: 1497265953), and approximately four other LMSWs, and two licensed clinical social workers ("LCSWs"), namely, Janet Atkinson (NPI: 1144326638) and Alan David Hambrecht (NPI: 1891119681).

## FALSE CLAIMS LIABILITY UNDER THE FCA AND NYSFCA

### FCA

17. The FCA as amended on May 20, 2009, imposes civil liability on "any person" who, among other things:

4

(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;...or

(G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government.

31 U.S.C. §§ 3729(a)(1)(A), (B) and (G) [amended May 20, 2009].

## FCA DAMAGES, PENALTIES AND AWARDS FOR FALSE CLAIMS

18. The FCA imposes liability on any person violating Section 3729 to the United States Government as follows: a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note; Public Law 104–410), plus three (3) times the amount of damages which the Government sustained because of the act of that person. 31 U.S.C. § 3729(a)(1).

19. Where the Government proceeds with an action commenced by the filing of a *qui tam* complaint and recovers money from a defendant under Section 3729, the person who initiated the action (the "relator") may receive up to twenty-five percent (25%) of the proceeds. Where the Government does not proceed with such an action and the relator pursues it on his/her own and recovers proceeds from a defendant under Section 3729, the relator may receive up to thirty percent (30 %) of the proceeds. In either case, the relator is also entitled to an award against the defendant for the amount of all reasonable expenses, attorneys' fees and costs. 31 U.S.C. § 3730(d).

## NYSFCA LIABILITY FOR FALSE CLAIMS

20.     The NYSFCA, effective as of August 27, 2010, imposes civil liability on "any person" who, among other things:

> (a) knowingly presents, or causes to be presented a false or fraudulent claim for payment or approval;
>
> (b) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;
>
> (g) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the state or a local government; or
>
> (h) Knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the state or a local government, or conspires to do the same.

N.Y. State Fin. Law §§189(1)(a), (b), (g) and (h) [August 27, 2010].

## NYSFCA DAMAGES, PENALTIES AND AWARDS FOR FALSE CLAIMS

21.     The NYSFCA imposes liability on any person violating Section 189(1) to the state or a local government, as applicable, for a civil penalty of not less than $6,000 and not more than $12,000, plus three (3) times the amount of all damages, including consequential damages, which the state or local government sustains because of the act of that person.  N.Y. State Fin. Law §189(1).

22.     Where the State or local government proceeds with an action commenced by the filing of a *qui tam* complaint and recovers money from a defendant under Section 189(1), the relator may receive up to twenty-five percent (25%) of the proceeds.  Where the State or local

government does not proceed with such an action and the relator pursues it on his/her own and recovers proceeds from a defendant under 189(1), the relator may receive up to thirty percent (30 %) of the proceeds. In either case, a relator who prevails in a NYSFCA *qui tam* action is also entitled to receive from the defendant the amount of all reasonable expenses, attorneys' fees and costs. N.Y. State Fin. Law §190(6).

## RELEVANT FCA AND NYSFCA DEFINITIONS

23. For purposes of the FCA, "claim" means any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that (i) is presented to an officer, employee, or agent of the United States; or (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government (I) provides or has provided any portion of the money or property requested or demanded; or (II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded. 31 U.S.C. § 3729(b)(2)(A) (as amended May 20, 2009; the prior version is materially identical for purposes of this action).

24. For purposes of the NYSFCA, "claim" means any request or demand, whether under a contract or otherwise, for money or property that (i) is presented to an officer, employee or agent of the state or a local government; or (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the state or a local government's behalf or to advance a state or local government program or interest, and if the state or local government (A) provides or has provided any portion of the money or property requested or demanded; or (B) will

reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded. N.Y. State Fin. Law § 188(1)(a).

25. For purposes of the FCA and the NYSFCA, "knowing" and "knowingly" mean that a person, with respect to information: (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required 31 U.S.C. § 3729(b); N.Y. State Fin. Law § 188(3)(a).

26. For purposes of the FCA and the NYSFCA, "obligation" means an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment. 31 U.S.C. § 3729(b)(3); N.Y. State Fin. Law § 188(4).

27. For purposes of the FCA and the NYSFCA, "material" means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property. 31 U.S.C. § 3729(b)(4); N.Y. State Fin. Law § 188(5).

## *QUI TAM*-RELATED BARS

28. Upon information and belief, none of the bars set forth in either the FCA's or NYSFCA's *qui tam*-related provisions, 31 U.S.C. §§ 3730(b)(5) and (e) and N.Y. State Fin. Law §§ 190(4) and (9), respectively, is applicable to this action.

29. Upon information and belief, prior to any "public disclosure" (as defined by the FCA and NYSFCA), and prior to the filing of this action, Relator voluntarily disclosed to the United States Attorney's Office for the Northern District of New York and the Office of the

Attorney General of the State of New York, the information on which the allegations or transactions in this complaint are based.

30. Through her employment by Defendant, Relator is an "original source" of the information on which her allegations are based, within the meaning of the FCA and NYSFCA.

## PATIENT PROTECTION AND AFFORDABLE CARE ACT

31. The Patient Protection and Affordable Care Act of 2010 ("PPACA"), P.L. 111-148, 124 Stat. 119 (March 23, 2010) makes the failure to reimburse Medicare or Medicaid within 60 days for an overpayment a so-called "reverse false claims violation" under the FCA and NYSFCA, see 31 U.S.C. § 3729(a)(1)(G) and N.Y. State Fin. Law §§189(1)(g) and (h).

32. Section 6402(a) of the PPACA (Enhanced Medicare and Medicaid Program Integrity Provisions), Pub. L. No. 111-148, 124 Stat. 119, 753-56 (2010), defines what constitutes an overpayment under the FCA and NYSFAC in the context of federal healthcare programs. Under this section, overpayments are "any funds that a person receives or retains under Title XVIII [Medicare] or XIX [Medicaid] to which the person, after applicable reconciliation, is not entitled." 42 U.S.C. § 1320a–7k(d)(4)(B).

33. Under 42 U.S.C. § 1320a-7k(d), the failure to timely return an overpayment is an "obligation" to the federal and New York State governments within the meaning of § 3729(b)(3) of the FCA and § 188(4) of the NYSFCA, respectively. Recipients of an overpayment from Medicare and Medicaid must report it to the government insurers and must return the overpayment within 60 days from when it was first identified (or reasonably should have been identified), or the date any corresponding cost report is due, whichever is later.

## MEDICARE AND MEDICAID PROGAMS

34.     Medicare, enacted in 1965 under Title XVIII of the Social Security Act, is a third party reimbursement program that underwrites medical expenses of the elderly and the disabled. 42 U.S.C.§§ 1395 et seq. Medicare reimbursements are paid from the federal Supplementary Medical Insurance Trust Fund. Medicare Part A covers hospital services. Medicare Part B generally covers physician services, including medical and surgical treatment and outpatient treatment and diagnosis. Part B, 42 U.S.C. §§ 1395j et seq.; 1395l (payment of benefits). The FCA Medicare *qui tam* claims at issue in this action (for outpatient mental healthcare services) arise under Medicare Part B.

35.     Medicaid, enacted in 1965 under Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 et seq., is a medical assistance program for indigent and other needy people that is financed by joint federal and state funding and is administered by the states according to federal regulations, oversight, and enforcement. Each state implements its version of Medicaid according to a State Plan that has been approved by HHS. Within broad federal regulatory and policy guidelines (see 42 C.F.R. § 430 et seq., and CMS publications), the states determine who is Medicaid-eligible, what services are covered, and how much to reimburse healthcare providers. The states, through intermediaries, also receive healthcare provider claims for program reimbursements, evaluate those claims, make payments to the healthcare providers, and present the claims to HHS/CMS for reimbursement of the federal government's share.

36.     New York's Medicaid Program was established in 1966. Act of Apr. 30, 1966, ch. 256, 1966 N.Y. Laws 844. By statute, NYSDOH administers this program at the state level. N.Y. Pub. Health Law § 201(1)(v). The FCA and NYSFCA Medicaid *qui tam* claims at issue in this action arise under the New York Medicaid program.

10

## BILLING PROCEDURES AND CLAIMS FOR
## MEDICARE AND MEDICAID PAYMENTS

37. The bills Defendant submitted to Medicare and Medicaid on either a fee for service or managed care basis, for reimbursement for outpatient mental healthcare services provided at the Oswego Behavior Services by unsupervised LMSWs are the "claims" at issue for purposes of the FCA and NYSFCA.

### A. Billing for LMSW Services

38. NYS Social Work: Laws, Rules & Regulations: Part 74 ("Part 74") set forth the various requirements for supervising clinic work performed by LMSWs. Section 74. 6 of Part 74 includes the following:

Certain qualified individuals, as defined in paragraph (2) of subdivision (a) of this section, that seek to use the services to satisfy the experience requirements for licensure as a licensed clinical social worker may provide clinical social work services in a setting acceptable to the department, as described in paragraph (1) of subdivision (a) of this section, under appropriate supervision, as prescribed in subdivision (c) of this section.

\*\*\*

c. Supervision of the clinical social work services provided by a qualified individual seeking licensure as a licensed clinical social worker.

1. Supervision of the clinical social work services provided by the qualified individual shall consist of contact between the qualified individual and supervisor during which:

   i. the qualified individual apprises the supervisor of the diagnosis and treatment of each client;
   ii. the qualified individual's cases are discussed;
   iii. the supervisor provides the qualified individual with oversight and guidance in diagnosing and treating clients;
   iv. the supervisor regularly reviews and evaluates the professional work of the qualified individual; and

11

    v. the supervisor provides at least one hundred hours of in-person individual or group clinical supervision, distributed appropriately over the period of the supervised experience.

  2. The supervision shall be provided by:

    i. a licensed clinical social worker or the equivalent as determined by the department; or
    ii. a psychologist who, at the time of supervision of the applicant, was licensed as a psychologist in the state where supervision occurred and was qualified in psychotherapy as determined by the department based upon a review of the psychologist's education and training, including but not limited to education and training in psychotherapy obtained through completion of a program in psychology registered pursuant to Part 52 of this Title or a program in psychology accredited by the American Psychological Association; or
    iii. a physician who, at the time of supervision of the applicant, was a diplomate in psychiatry of the American Board of Psychiatry and Neurology, Inc. or had the equivalent training and experience as determined by the department.

d. Supervision of a licensed master social worker providing clinical social work services in accordance with section 7701(1)(d) of the Education Law who is not using such services to satisfy the experience requirements for licensure as a licensed clinical social worker.

1. Supervision of the clinical social work services provided by the licensed master social worker shall consist of contact between the licensed master social worker and supervisor during which:

    i. the licensed master social worker apprises the supervisor of the diagnosis and treatment of each client;
    ii. the licensed master social worker's cases are discussed;
    iii. the supervisor provides the licensed master social worker with oversight and guidance in diagnosing and treating clients;
    iv. the supervisor regularly reviews and evaluates the professional work of the licensed master social worker; and
    v. the supervisor provides at least two hours per month of in-person individual or group clinical supervision.

2. The supervision shall be provided by an appropriate supervisor as described in paragraph (c)(2) of this section.

e. Verification of the experience. The supervisor shall be responsible for maintaining records of the client contact hours in diagnosis, psychotherapy and

assessment-based treatment planning and supervision hours provided to the qualified individual. Upon request by the department, such records shall be provided by the supervisor.

39. New York State Medicaid issued an Update dated December 2013 (Volume 29 - Number 1316) that addressed in Q and A format various billing-related issues, including the following question and answer.

> Question: "Licensed Master Social Workers (LMSWs) provide services in our mental health program. We use their NPIs in the attending field on claims when billing Medicaid for the services they provide. Since Medicaid does not enroll LMSWs, can we continue to report their NPI on our claims?
>
> Answer: "Yes. The clinician performing the service continues to be entered as the attending provider on the claim. However, an enrolled referring professional must be added to the claim. As appropriate, *you should report the NPI of the (enrolled) physician who signed the treatment plan or the NPI of the (enrolled) individual who supervises the LMSW*. Using your agency's NPI in the referring field may be appropriate in some cases. Please contact OMH Financial Planning by email OMH-Medicaid-Help@omh.ny.gov with questions." (Emphasis added.)

40. In December 2018, Defendant prepared and circulated to employees at Oswego Behavioral Health an Outpatient Policy and Procedure expressly confirming that "All LMSW will be under the supervision of a qualified supervisor, as defined in the NYS Education Law and Regulations," which it notes, includes, a requirement that "The Supervisor provides at least 100 hours of in-person individual or group clinical supervision, distributed appropriately over the period of the supervised experience."

### B. Wrongful Retention

41. Under the PPACA, the failure to reimburse Medicare or Medicaid for an overpayment within 60 days of the date when one knew, or should have known, of its improper receipt is a per se violation of the FCA. 42 U.S.C. § 1320a-7k(d); 31 U.S.C. § 3729(b)(3).

13

## FACTUAL ALLEGATIONS CONCERNING
## DEFENDANT'S IMPROPER BILLING PRACTICES

42. Beginning in or about January 2018 and continuing through early 2019, LMSWs at Oswego Behavioral Services, including, Relator, Rhonda O'Connor and Melissa Ann Gallup, provided mental healthcare services subject to the supervision requirements set out above to fee for services and managed care Medicare and Medicaid beneficiaries without the supervision required to bill these government programs for such services.

43. Notwithstanding for foregoing, Defendant billed Medicare and Medicaid for the above services and falsely represented on its claim forms that the LMSWs were properly supervised by LCSWs, including Janet Atkinson and Alan David Hambrecht.

44. Relator repeatedly alerted Defendant via communication with its employees, including Jody Pittsley, Director of Outpatient Behavioral Health Services, and Janet Atkinson, that Relator's services were being improperly billed to government insurance programs because she was not receiving the required level of supervision.

45. Upon information and belief, Defendant has taken no corrective action with respect to any of the services fraudulently billed to Medicare and Medicaid and has continued to submit such fraudulent claims.

## COUNT I
### Federal False Claims Act Violations
### 31 U.S.C. §§ 3729(a)(1)(A), (B), and (G) [amended May 20, 2009]

46. Relator realleges the above allegations as if set forth fully here.

47. This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. §§ 3729-32.

48. Through the acts described above and otherwise, Defendant, by and through its agents and employees: (i) knowingly presented, or caused to be presented, a false or fraudulent claim for payment or approval; (ii) knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim; and (iii) knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government, all in violation of 31 U.S.C. §§ 3729(a)(1)(A), (B) and (G) [amended May 20, 2009].

49. On information and belief, the United States was unaware of the falsity of the records, statements, and claims made or submitted by Defendant.

50. On information and belief, the false and fraudulent representations and claims made to the United States by Defendant were material to the Government's decisions to make Medicare and Medicaid payments to Defendant.

51. On information and belief, if the United States had known of the false or fraudulent nature of Defendant's representations and claims, it would not have made the Medicare and Medicaid payments to Defendant.

52. By reason of Defendant's violations of the False Claims Act, the United States has suffered economic loss.

## COUNT II
### New York False Claims Act Violations
### N.Y. Fin. Law §§ 189(1)(a), (b), (g) and (h) [effective August 26, 2010]

35. Relator realleges the above allegations as if set forth fully here.

53. In connection with claims submitted to the New York Medicaid Program and the United States, Defendant: (i) knowingly presented, or caused to be presented a false or fraudulent claim for payment or approval; (ii) knowingly made, used or caused to be made or used, a false record or statement material to a false or fraudulent claim; (iii) knowingly made, used or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the state or a local government; and (iv) knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the state or a local government, or conspired to do the same, all in violation of N.Y. State Fin. Law §§189(1)(a), (b), (g) and (h).

54. On information and belief, the State of New York has paid money to Defendant upon the false, fictitious, or fraudulent claims described in this complaint and has thereby suffered damages.

55. On information and belief, if the State of New York had known of the falsity of the Defendant's claims, it would not have made the Medicaid payments to Defendant.

56. By reason of Defendant's violations of the New York False Claims Act, the State of New York has suffered economic loss.

## **DEMAND FOR RELIEF**

WHEREFOR, Relator, on behalf of herself individually, and acting on behalf and in the name of the United States and the State of New York, demand judgment against Defendant as follows:

A. On Count I,

(i) Directing that Defendant cease and desist from violating the FCA;

(ii) In the amount of three times the amount of damages the United States has sustained because of Defendant's actions, plus a civil penalty of $11,000 for each act in violation of the FCA, as provided by 31 U.S.C. § 3729(a), with interest;

(iii) Directing that Relator be awarded the maximum amount available under 31 U.S.C. § 3730(d) for bringing this action, namely, twenty-five percent of the proceeds of the action or settlement of the claim if the United States intervenes in the matter (or pursues its claim through any alternate remedy available to the United States, 31 U.S.C. § 3730(c)(5)), or, alternatively, thirty percent of the proceeds of the action or settlement of the claim, if the United States declines to intervene;

(iv) Awarding Relator all reasonable expenses necessarily incurred in prosecution this action, plus all reasonable attorneys' fees and costs, as provided by 31 U.S.C. § 3730(d);

B. On count II,

(i) Directing that Defendant cease and desist from violating the NYSFCA;

(ii) In the amount of three times the amount of damages which the State of New York has sustained because of Defendant's actions for each act of Defendant in violation of the NYSFCA, plus a civil penalty of $12,000 for each violation, as provided by N.Y. Fin. Law§189(1)(g)(ii);

(iii) Directing that Relator be awarded the maximum amount available under N.Y. Fin. Law § 190(6), awarding Relator the maximum amount available under the NYSFCA for bringing this action, namely, twenty-five percent of the proceeds recovered in the action or in settlement of the action if the New York attorney general elects to convert the qui tam civil action into an attorney general

17

enforcement action, or, if the New York attorney general does not elect to intervene or convert the action, thirty percent of the proceeds recovered in the action or settlement of the action;

(iv) Awarding Relator all reasonable expenses that were necessarily incurred in prosecution of this action, plus all reasonable attorneys' fees and costs, as provided by N.Y. Fin. Law § 190(6);

C. All other appropriate relief for the United States, the State of New York, and Relator.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Relator hereby demands that this case be tried before a jury.

Dated: April 10, 2019
New York, NY

/s/ Timothy J. McInnis
Timothy J. McInnis, Esq.
McInnis Law
521 5th Avenue, 17th Floor
New York, NY 10175-0038
Tel. (212) 292-4573
Fax (212) 292-4574
tmcinnis@mcinnis-law.com

Thomas R. Fallati, Esq.
Tabner Ryan and Keniry LLP
18 Corporate Woods Boulevard,
Albany, NY 12211
Tel. (518) 512-5307
Fax (518) 465-5112
trf@trklaw.com

*Attorneys for Relator*