

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA and
STATE OF NEW YORK *ex rel.*
MAUREEN MOUNCE BRADLEY,

                    Plaintiffs,

        -against-

OSWEGO HOSPITAL, INC.

                    Defendant.

Civil Action No.
5:19-CV-0431 (GTS)(ATB)

## NEW YORK STATE'S NOTICE OF INTERVENTION

        Pursuant to the New York False Claims Act, N.Y. Fin. Law §189, *et seq.*, the State

of New York, acting through the Attorney General's Medicaid Fraud Control Unit (the "State")

hereby notifies the Court of its intention to intervene and convert for the purposes of settling all

allegations against defendant Oswego Hospital, Inc. ("Oswego"). Filed simultaneously with this

Notice of Intervention is a Stipulation and Order of Settlement.

DATED:  New York, New York
           August 31, 2022

                        **THE STATE OF NEW YORK**

                        LETITIA JAMES
                        Attorney General of the
                        State of New York

By:                                         
                        Ralph D. Tortora III
                        Regional Director
                        Medicaid Fraud Control Unit
                        Syracuse Regional Office
                        300 South State Street, Suite 350
                        Syracuse, NY 13202-2060
                        (315) 423-1121
                        Ralph.Tortora@ag.ny.gov

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA and
STATE OF NEW YORK *ex rel.*
MAUREEN MOUNCE BRADLEY,

                           Plaintiffs,

            -against-

OSWEGO HOSPITAL, INC.

                         Defendant.

          Civil Action No.
          5:19-CV-0431 (GTS)(ATB)

## SETTLEMENT AGREEMENT

      **THIS SETTLEMENT AGREEMENT** (the "Agreement") was reached the ___ day of August 2022, by and among the State of New York (hereinafter, the "State") by the Office of the Attorney General, through the Medicaid Fraud Control Unit (hereinafter, "MFCU"), Oswego Hospital, Inc., and Maureen Mounce Bradley ("Relator"). The State, Oswego Hospital, Inc. and Relator shall be collectively referred to herein as the "Parties."

      **WHEREAS**, at all relevant times, Oswego Hospital, Inc. was and is a 164-bed acute care community hospital, with its principal place of business located at 110 West Sixth Street in Oswego, New York 13126. Oswego Health, Inc. ("Oswego Health") is the sole member and owner of Oswego Hospital, Inc. Oswego Hospital, Inc. is enrolled as a provider of medical services in the New York State Medical Assistance Program (hereinafter, the "Medicaid Program") under MMIS No. 02997771 and NPI No. 1871678458; and

      **WHEREAS**, at all relevant times, Oswego Behavioral Health Services was and is an outpatient clinic that provides mental and behavioral healthcare services, including clinical social work services, to patients of Oswego Hospital, Inc., including patients who are Medicare and

Medicaid beneficiaries.  Oswego Behavioral Health is a division of Oswego Hospital, Inc. and

Oswego Health.  Hereafter, Oswego Hospital, Inc. Oswego Health, and Oswego Behavioral

Services are collectively referred to as "Oswego Hospital."

**WHEREAS,** Oswego Hospital employed licensed master social workers ("LMSWs") to

render mental healthcare services to its patients during the relevant time period; and

**WHEREAS,** Medicaid limits coverage and reimbursement for mental and behavioral

healthcare and clinical social work services that are legally authorized to be performed in

accordance with State law or regulatory mechanisms established by State law and has strict

requirements concerning the supervision of LMSWs.  Accordingly, Oswego Hospital was required

to provide supervision and maintain records of the supervision hours and activities for each of its

LMSWs pursuant to New York State Education Law Article 154, Social Work, Section 7701, and

the Commissioner's Regulations for Social Work Part 74, which set forth:

> *Licensed master social workers practice licensed clinical social work in*
> *facility settings or other supervised settings approved by the department*
> *under supervision in accordance with the commissioner's regulations. [New*
> *York State Education Law § 7701(1)(d)]; and*

> *The supervisor shall be responsible for maintaining records of the client*
> *contact hours in diagnosis, psychotherapy and assessment-based treatment*
> *planning and supervision hours provided to the qualified individual.  Upon*
> *request by the department, such records shall be provided by the supervisor.*
> *[8 N.Y.C.R.R. Part 74.6(e)].*

**WHEREAS,** on April 10, 2019, Relator Maureen Mounce Bradley (hereinafter "Relator"),

filed a *qui tam* action in the United States District Court for the Northern District of New York,

captioned *United States of America and State of New York, ex rel. Maureen Mounce Bradley v.*

*Oswego Hospital,* No. 5:19-cv-0431, pursuant to the *qui tam* provisions of the False Claims Act,

31 U.S.C. § 3730(b) and the New York State False Claims Act ("NYFCA"), State Finance Law

Article 13 §§ 187-194 (hereinafter, the "Civil Action"). Relator alleged that Oswego Hospital violated the Federal and New York State False Claims Acts by, among other things, (a) billing Medicare and Medicaid for outpatient mental healthcare services that were rendered by unsupervised LMSWs; (b) allowing LMSWs to provide mental healthcare services, to patients who were fee-for-service and to managed care Medicare and Medicaid beneficiaries, without providing the supervision required by these government programs for such services; (c) falsely representing on claims forms that the LMSWs were properly supervised; and (d) failing to reimburse Medicare or Medicaid for the overpayments caused by the foregoing conduct.

**WHEREAS**, The United States and the Attorney General of the State of New York, through MFCU, jointly investigated the allegations in the Civil Action with respect to Oswego Hospital and found that Oswego Hospital engaged in the conduct described below (the "Covered Conduct"):

A. Between January 1, 2018, through May 24, 2018 (hereinafter, the "Relevant Period"), Oswego Hospital submitted or caused to be submitted claims for payment to the Medicaid Program under 42 U.S.C. § 1395-1396v and to various Medicaid Managed Care entities (collectively referred to herein as the "Government Payors"), and the Government Payors relied upon such claims to pay Oswego Hospital;

B. During the Relevant Period, Oswego Hospital failed to provide the requisite supervision hours and activities for a licensed master social worker identified as "LMSW No. 1";

C. During the Relevant Period, Oswego Hospital failed to maintain records of adequate supervision hours and activities for LMSW No. 1 and another licensed master social worker identified as "LMSW No. 2";

D. During the Relevant Period, Oswego Hospital was not in compliance with the requirements of New York State and government healthcare program regulations for the reimbursement of such claims;

E. During the Relevant Period, Oswego Hospital knowingly allowed LMSW No. 1 and LMSW No. 2 to provide mental healthcare and clinical social work services to its patients, including patients who were fee-for-service and managed care Medicare and Medicaid beneficiaries;

F. Oswego Hospital submitted or caused claims to be submitted to Medicare and Medicaid for said services, billed under CPT Codes 90832, 90834, 90846, 90853, and 90791, when LMSW No. 1 was not qualified to render the aforesaid services, and Oswego Hospital could provide no contemporaneous documentation for LMWS No. 2's supervision, if in fact such supervision had been provided.  Thus, the elements required for payment of such claims under government healthcare program regulations for those CPT Codes were not met; and

G. Oswego Hospital retained the payments that were received through the foregoing conduct.

**WHEREAS,** the State, as a result of the Covered Conduct, has certain civil claims against Oswego Hospital from the Covered Conduct under the NYFCA, State Fin. Law §§ 188 *et seq.*, Social Services Law § 145-b, Executive Law § 63(12), Executive Law § 63-c and other New York statutes and the common law.

**WHEREAS,** Relator claims entitlement under State Fin. Law § 190(6) to a share of the proceeds of this Agreement and to Relator's reasonable expenses, attorneys' fees and costs.

**WHEREAS,** Oswego Hospital wishes to resolve its civil liability for the Covered Conduct; and

**WHEREAS**, Oswego Hospital is contemporaneously herewith entering into an agreement with the United States (the "United States Agreement") to resolve the United States' claims arising from the Covered Conduct.

**NOW, THEREFORE**, in consideration of the mutual covenants and undertakings set forth herein, the Parties agree as follows:

**TERMS AND CONDITIONS**

1.  Oswego Hospital shall pay to the United States and the State of New York a total of Eighty Thousand Four Hundred Forty-two Dollars and Seventy-eight Cents ($80,442.78) (the "Total Settlement Amount") for damages to the Medicaid Program.

2.  Of the Total Settlement Amount, Oswego Hospital shall pay the State Sixty-Two Thousand One Hundred Forty Dollars and Twelve Cents ($62,140.12) ("State Settlement Amount"), for the State's share of the Medicaid damages. The State Settlement Amount shall be paid by check, payable to the "New York State Medicaid Fraud Control Restitution Fund," or by electronic funds transfer, pursuant to written instructions from the State, and shall be made no later than fourteen (14) days after the Effective Date of this Agreement.

3.  Upon the State's receipt of the State Settlement Amount, the State shall pay Relator a share in the amount of Twelve Thousand Four Hundred Twenty-Eight Dollars and Two Cents ($12,428.02) (the "Relator's Share"). The State's obligation to pay the full Relator's Share is conditioned upon the State's receipt of full payment of the State Settlement Amount.

4.  The State Settlement Amount does not include Relator's reasonable expenses, attorneys' fees and costs pursuant to State Fin. Law §190(6), which shall be paid separately by Oswego Hospital, Relator and Relator's counsel.

5. Subject to the exceptions in Paragraph 7 below (concerning excluded claims) and conditioned upon full payment of the State Settlement Amount by Oswego Hospital as set forth in Paragraph 2 above, the State releases Oswego Hospital, its present and former parents, subsidiaries, affiliates, agents, representatives, partners, assigns, employers, insurance carriers, predecessors in interest, and successors in interest (the "Released Entities"), from any civil monetary claim the State has or may have against Oswego Hospital for the Covered Conduct under the New York False Claims Act, New York State Financial Law § 189, *et seq.,* New York Social Services Law § 145-b, Executive Law § 63(12), Executive Law § 63-c, and the common law theories of unjust enrichment, fraud, payment by mistake, monies had an received and breach of contract.

6. Notwithstanding the releases given in Paragraph 5 above, or any other term of this Agreement, the State specifically does not release:

   a. Any civil or administrative liability arising under State revenue codes;

   b. Any criminal liability;

   c. Any administrative liability, including mandatory or permissive exclusion from the State's Medicaid Program;

   d. Any civil or administrative liability that Oswego Hospital has or may have to the State or to individual consumers or State program payors under any statute, regulation, or rule not expressly covered by the release in this paragraph, including but not limited to any and all claims involving unfair and/or deceptive acts and practices and/or violations of consumer protection laws;

   e. Any liability to the State (or its agencies) for any conduct other than the Covered Conduct;

      f.  Any liability for personal injury, patient abuse, or neglect, arising from the Covered Conduct;

      g.  Any liability of individuals;

      h.  Any liability which may be asserted by or on behalf of any payor or insurer paid by the State's Medicaid Program on a capitated basis, other than liability of Oswego Hospital to the State for the Covered Conduct; and

      i.  Any liability based upon obligations created by this Agreement.

    7.  Relator, her heirs, successors, attorneys, agents, and assigns shall not object to this Agreement and agrees and confirms that this Agreement is fair, adequate and reasonable under all the circumstances, pursuant to State Finance Law § 190(5)(b)(ii).

    8.  In consideration of the obligations of Oswego Hospital in this Agreement, and conditioned upon Oswego Hospital's full payment of the Total Settlement Amount, Relator, for herself and for her heirs, successors, attorneys, agents, and assigns, releases Oswego Hospital, its current divisions, parents, affiliates, subsidiaries, successors, agents and assigns, and their current and former principals, directors, officers and employees from any claims or allegations that Relator asserted or could have asserted, arising from the Covered Conduct and from all liability, claims, demands, actions, or causes of action whatsoever, whether known or unknown, fixed or contingent, in law or in equity, in contract or in tort, under any federal or state statute or regulation, or in common law, that Relator would have standing to bring in any capacity as of the Effective Date of this Agreement as limited to the Covered Conduct or the allegations in the Civil Action. Relator acknowledges that she may later discover facts different from or in addition to those which she or her attorneys now know or believe to be true. It is the intention of Relator to fully, finally, and forever settle and release all claims against the Oswego Hospital arising from the Covered Conduct

or the allegations in the Civil Action, and the releases provided herein shall remain in effect notwithstanding the discovery or existence of any additional or different facts or the occurrence of any future events, circumstances or conditions. Relator's claims that are released include but are not limited to any claims by Relator, Relator's counsel, or the heirs, successors, attorneys, agents, or assigns of any of them against the Oswego Hospital arising from the filing of the Civil Action or the negotiation of this Agreement including Relator's claim to expenses, attorneys' fees, and costs under State Fin. Law § 190(6). Relator and her counsel represent and warrant that they have not assigned, subrogated or transferred any interest in any claims falling within the scope of this paragraph.

9. Conditioned upon Relator's receipt of the payment described in Paragraph 3, Relator, her successors, attorneys, agents, and assigns, releases the State, its agencies, officers, agents, employees and servants from any claims the Relator has asserted, could have asserted or may assert in the future on behalf of the State arising from the Covered Conduct, or the allegations in the Civil Action under State Fin. Law §§ 188 *et seq.*, and from any claim to a share of the proceeds of the State Settlement Amount.

10. Oswego Hospital waives the right to raise the Double Jeopardy Clause in the Fifth Amendment or the Excessive Fines Clause in the Eighth Amendment to the United States Constitution in any future criminal prosecution or administrative action for the Covered Conduct, and acknowledges and agrees this Agreement bars any remedy in any such criminal or administrative action.

11. In consideration of the obligations of the State set forth in this Agreement, Oswego Hospital waives, discharges and fully releases the State, its agencies, officers, political subdivisions, employees, servants, and agents, from any causes of action (including attorneys'

fees, costs, and expenses of every kind and however denominated) which Oswego Hospital has asserted, could have asserted, or may assert in the future, against the State, its agencies, officers, political subdivisions, employees, servants, and agents, related to the Covered Conduct and the State's investigation and prosecution thereof.

12. Oswego Hospital fully and finally releases Relator from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Oswego Hospital has asserted, could have asserted, or may assert in the future against Relator related to the Covered Conduct, the allegations set forth in the Civil Action, and Relator's investigation and prosecution thereof.

13.   The State Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by the State Medicaid Program, or any other state payor, for the Covered Conduct, and Oswego Hospital agrees not to resubmit to the State Medicaid Program, or any other state payor, any previously denied claims, which denials were based upon the Covered Conduct, and agrees not to appeal or cause the appeal of any such denials of claims.

14.   Oswego Hospital shall not seek payment for any claims for reimbursement to the State Medicaid Program covered by this Agreement from any healthcare beneficiaries or their parents, sponsors, legally responsible individuals, or third-party payors.

15.   Oswego Hospital agrees to the following:

a.   Unallowable Costs Defined:  All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk and  1396-1396w-5;  and  the  regulations  and  official  program  directives

promulgated thereunder) incurred by or on behalf of Oswego Hospital or any of their present or former officers, directors, trustees, employees, shareholders, and agents, in connection with:

    i.  the matters covered by this Agreement;

    ii.  the State's audit and any civil and/or criminal investigation of the matters covered by this Agreement;

    iii.  the investigation, defense, and corrective actions undertaken by Oswego Hospital in response to the State's audit and any civil and/or criminal investigation in connection with the matters covered by this Agreement (including attorneys' fees);

    iv.  the negotiation and performance of this Agreement; and

    v.  the payments that Oswego Hospital makes relating to this Agreement, including costs and attorney's fees, are unallowable costs for government contracting purposes and under the Medicaid Program (hereinafter referred to as "Unallowable Costs").

    b.  Future Treatment of Unallowable Costs:  Unallowable Costs shall be separately determined and accounted for in non-reimbursable cost centers by Oswego Hospital, and Oswego Hospital shall not charge such Unallowable Costs directly or indirectly to any contracts with the Medicaid Program or seek payment for such Unallowable Costs through any Consolidated Fiscal Report, cost report, cost statement, information statement, or payment request submitted by Oswego Hospital to the Medicaid Program.

    c.  Treatment of Unallowable Costs Previously Submitted for Payment:  Oswego Hospital further agrees that, within 90 days of the Effective Date of this Agreement, they shall identify to applicable Medicaid fiscal agents any Unallowable Costs (as defined in Paragraph 17(a) above) that were included in payments previously sought from the Medicaid Program, including but not limited to payments sought in any cost reports, cost statements, information reports, or payment

requests already submitted by Oswego Hospital and shall request and agree that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs. Oswego Hospital agrees that the State, at a minimum, shall be entitled to recoup from Oswego Hospital any overpayment, plus applicable interest and penalties, as a result of the inclusion of such Unallowable Costs on previously submitted cost reports, information reports, cost statements, appeals, or requests for payment. Any payments due after the adjustments have been made shall be paid to the State. The State reserves its rights to disagree with any calculations submitted by Oswego Hospital on the effect of inclusion of Unallowable Costs (as defined in this paragraph) on Oswego Hospital's Consolidated Fiscal Reports, cost reports, cost statements, or information reports, appeals, or other payment requests.

   d. Nothing in this Agreement shall constitute a waiver of the rights of the State to audit, examine, or re-examine the books and records of Oswego Hospital to determine that no Unallowable Costs have been claimed in accordance with the provisions of this paragraph.

   16. The Parties each represent that this Agreement is freely and voluntarily entered into without any degree of duress or compulsion whatsoever.

   17. This Agreement shall be deemed to have been mutually prepared by the Parties hereto and shall not be construed against any of them solely by reason of authorship.

   18. Each Party to this Agreement shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement, with the exception of Relator's reasonable expenses, attorneys' fees, and costs as provided in Paragraph 4 above.

19.    Except as otherwise stated in this Agreement, this Agreement is intended to be for the benefit of the Parties only, and by this instrument the Parties do not release any liability against any other person or entity.

20.    Oswego Hospital agrees that it waives and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third-party payors based upon the claims defined as Covered Conduct.

21.    No portion of the Settlement Amount, nor any related expense on the part of Oswego Hospital, shall be claimed as any tax loss or expense nor claimed on any government contract or rate application.

22.    Oswego Hospital waives any claim for any tax rebate or refund, or other governmental payment from the State, until the State Settlement Amount is satisfied. In the State's sole discretion, the State may recoup or offset any such payment, without further notice to Oswego Hospital, for credit toward the State Settlement Amount.

23.    Oswego Hospital agrees not to take any action or to make or permit to be made any public statement denying, directly or indirectly, any finding in this Agreement or creating the impression that this Agreement is without factual basis. Nothing in this paragraph affects Oswego Hospital's (a) testimonial obligations or (b) right to take contrary legal or factual positions in defense of litigation or other proceedings to which the Attorney General is not a party.

24.    This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to choice of law or conflict of laws principles. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Northern District of New York.

25.    Any failure by the State to insist upon the strict performance of any of the provisions of this Agreement shall not be deemed a waiver of any of the provisions hereof, and the State, notwithstanding that failure, shall have the right thereafter to insist upon strict performance of any and all of the provisions of this Agreement.

26.    The undersigned represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

27.    All non-electronic payments shall be delivered to the Medicaid Fraud Control Unit, 300 South State Street, Suite 350, Syracuse, New York 13202. Any other notices pursuant to this Agreement shall be in writing and shall, unless expressly provided otherwise herein, be given by hand delivery, express courier, and/or email, followed by postage prepaid first-class mail, addressed as follows:

To The State:  
                       Office of the Attorney General  
                       Medicaid Fraud Control Unit  
                       300 South State Street, Suite 350  
                       Syracuse, New York  13202  
                       *MFCUNotices@ag.ny.gov*

To Oswego Hospital:  
                       **JOHN F. DARLING**, Esq.  
                       **BOND, SCHOENECK & KING**  
                       350 Linden Oakes, Third Floor  
                       Rochester, New York  14625-2825

To Relator:  
                       Timothy J. McInnis, Esq.  
                       McInnis Law  
                       521 Fifth Avenue, 17th Floor  
                       New York, New York  10175

28.    The effective date of this Agreement shall be the date of the signature of the last signatory to this Agreement ("Effective Date").

29.    Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

30.   This Agreement shall be binding on all successors, transferees, heirs, and assigns of Oswego.

31.   This Agreement constitutes the complete agreement between the Parties with respect to this matter and shall not be amended except by written consent of the Parties.

32.   This Agreement may be executed in counterparts, each of which shall constitute an original, and all of which shall constitute one and the same Agreement.

**WHEREFORE**, the Parties have read the foregoing Agreement and accept and agree to the provisions contained herein and hereby have caused this Agreement to be signed as of the day and date adjacent to their signature.

**THE STATE OF NEW YORK**

LETITIA JAMES
*Attorney General of the State of New York*

BY:  *Ralph D. Tortora* ✓✓✓          Dated:   8/31/2022

      Ralph D. Tortora, III
      Special Assistant Attorney General
      Medicaid Fraud Control Unit
      300 South State Street, Suite 350
      Syracuse, New York  13202

**OSWEGO HOSPITAL**

BY:                               Dated:   8|17|22

      Michael A. Harlovic
      President & Chief Executive Officer
      Oswego Health, Inc.

State of New York         )
                          )ss:
County of Oswego          )

On the _17_ day of August, in the year 2022, before me, the undersigned, a Notary Public in and for said State, personally appeared *Michael A. Harlovic*, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument, and acknowledged to me that he executed the same in his capacity *as President and Chief Executive Officer of* Oswego Health, Inc., and that by his signature on the instrument, the individual or the entity upon behalf of which the individual acted, executed the instrument.

> KIMBERLY M SULLIVAN DEC
> Notary Public, State of New York
> No. 01SU6305630
> Qualified in Onondaga County
> Commission Expires June 09, 2026

_____
NOTARY PUBLIC

*Approved as to Form*

BY: _____          Dated: _8/12/2022_
   John F. Darling
   BOND, SCHOENECK & KING
   350 Linden Oakes, Third Floor
   Rochester, New York  14625-2825
   *Counsel for Oswego Hospital*


**RELATOR**

BY: _____          Dated: _____
   Maureen Mounce Bradley


**MCINNIS LAW**

BY: _____          Dated: _____
   Timothy J. McInnis, Esq.
   *Counsel for Relator*

State of New York )
)ss:
County of Oswego )

On the _____ day of August, in the year 2022, before me, the undersigned, a Notary Public in and for said State, personally appeared *Michael A. Harlovic*, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument, and acknowledged to me that he executed the same in his capacity *as President and Chief Executive Officer of* Oswego Health, Inc., and that by his signature on the instrument, the individual or the entity upon behalf of which the individual acted, executed the instrument.

_____
NOTARY PUBLIC

*Approved as to Form*

BY: _____     Dated: _____
John F. Darling
BOND, SCHOENECK & KING
350 Linden Oakes, Third Floor
Rochester, New York 14625-2825
*Counsel for Oswego Hospital*

**RELATOR**

BY: _____     Dated: 8/24/22
Maureen Mounce Bradley

**MCINNIS LAW**

BY: _____     Dated: 8/25/22
Timothy J. McInnis, Esq.
*Counsel for Relator*